People v Hurst (2022 NY Slip Op 02670)

People v Hurst

2022 NY Slip Op 02670

Decided on April 22, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 22, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, CURRAN, WINSLOW, AND BANNISTER, JJ.

203 KA 19-01959

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
MICHAEL HURST, DEFENDANT-APPELLANT. 

THE SAGE LAW FIRM GROUP PLLC, BUFFALO (KATHRYN FRIEDMAN OF COUNSEL), FOR DEFENDANT-APPELLANT.
JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (ASHLEY R. LOWRY OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Erie County (John L. Michalski, A.J.), rendered July 26, 2019. The judgment convicted defendant upon a jury verdict of criminal sexual act in the first degree (two counts), rape in the first degree (three counts), robbery in the third degree, sexual abuse in the first degree and criminal contempt in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, two counts of criminal sexual act in the first degree (Penal Law § 130.50 [1]), three counts of rape in the first degree (§ 130.35 [1]), and one count of sexual abuse in the first degree (§ 130.65 [1]). We affirm.
We reject defendant's contention that Supreme Court erred in denying his request for access to all of the mental health records of the victim in this case. "Mental health records are discoverable where a defendant can demonstrate a good faith basis for believing that the records contain data relevant and material to the determination of guilt or innocence, a decision which will rest largely on the exercise of a sound discretion by the trial court" (People v Tirado, 109 AD3d 688, 688 [4th Dept 2013], lv denied 22 NY3d 959 [2013], reconsideration denied 22 NY3d 1091 [2014] [internal quotation marks omitted]; see generally People v Gissendanner, 48 NY2d 543, 548 [1979]). Such "records should be disclosed only when their confidentiality is significantly outweighed by the interests of justice" (Tirado, 109 AD3d at 688 [internal quotation marks omitted]; see People v Felong, 283 AD2d 951, 952 [4th Dept 2001], lv denied 96 NY2d 862 [2001]).
Here, defendant requested, inter alia, all of the victim's mental health records based on the People's Brady disclosures indicating that the victim had made several statements during preparation for her grand jury testimony that raised concerns about her mental state. Under those circumstances, the court conducted an in camera review of the requested mental health records, and granted defendant's request in part by turning over to him approximately 50 pages of redacted mental health records. We conclude that the court did not abuse its discretion in disclosing to defendant only those select portions of the victim's mental health records because it properly "balanced defendant's 6th Amendment right to cross-examine an adverse witness and his right to any exculpatory evidence against the countervailing public interest in keeping certain matters confidential" (People v McCray, 102 AD3d 1000, 1005 [3d Dept 2013], affd 23 NY3d 193 [2014], rearg denied 24 NY3d 947 [2014]; see Gissendanner, 48 NY2d at 549-551). In reaching our conclusion, we have ourselves reviewed the voluminous mental health records of the victim sought by defendant, and note that the court "provided an appropriate sample of documents that covers all of the victim's relevant and material mental health issues" (McCray, 102 AD3d at 1005). Indeed, the records sought by defendant that the court did not disclose were either wholly irrelevant to the determination of defendant's guilt or innocence (see Tirado, 109 [*2]AD3d at 688-689), or largely cumulative of those records that the court did, in fact, disclose to defendant (see McCray, 23 NY3d at 198-199). Thus, there is no " 'reasonable possibility' " that defendant would have been acquitted if the jury had access to all of the records sought by defendant (id. at 198).
Defendant's contention that the evidence is legally insufficient to support the conviction is unpreserved for our review because defendant's general motion for a trial order of dismissal was not " 'specifically directed' at" any alleged shortcoming in the evidence now raised on appeal (People v Gray, 86 NY2d 10, 19 [1995]; see People v Turner, 197 AD3d 997, 997 [4th Dept 2021], lv denied 37 NY3d 1061 [2021]). Nevertheless, " 'we necessarily review the evidence adduced as to each of the elements of the crimes in the context of our review of defendant's challenge regarding the weight of the evidence' " (People v Stepney, 93 AD3d 1297, 1298 [4th Dept 2012], lv denied 19 NY3d 968 [2012]).
Viewing the evidence in light of the elements of the crimes as
charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]),
we conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Where, as here, "witness credibility is of paramount importance to the determination of guilt or innocence, we must give great deference to the jury, given its opportunity to view the witnesses and observe their demeanor" (People v Streeter, 118 AD3d 1287, 1288 [4th Dept 2014], lv denied 23 NY3d 1068 [2014], reconsideration denied 24 NY3d 1047 [2014] [internal quotation marks omitted]; see People v McKay, 197 AD3d 992, 993 [4th Dept 2021], lv denied 37 NY3d 1060 [2021]). Here, the jury was "entitled to credit the testimony of the People's witnesses . . . over the testimony of defendant's witness[ ]," and we perceive no reason to disturb the jury's credibility determinations in that regard (People v Tetro, 175 AD3d 1784, 1788 [4th Dept 2019]). Although the victim obviously suffered from some mental health problems, the jury was aware of her history and diagnoses, and there was nothing about the victim's trial testimony that was "manifestly untrue, physically impossible, contrary to experience, or self-contradictory" (People v Barnes, 158 AD3d 1072, 1073 [4th Dept 2018], lv denied 31 NY3d 1011 [2018] [internal quotation marks omitted]). Further, despite some inconsistencies in the victim's testimony, we conclude that her "testimony was not 'so inconsistent or unbelievable as to render it incredible as a matter of law' " (People v Lewis, 129 AD3d 1546, 1548 [4th Dept 2015], lv denied 26 NY3d 969 [2015]; see People v O'Neill, 169 AD3d 1515, 1515-1516 [4th Dept 2019]), and any such inconsistencies merely presented issues of credibility for the jury to resolve (see People v Cross, 174 AD3d 1311, 1314-1315 [4th Dept 2019], lv denied 34 NY3d 950 [2019]). Finally, the lack of any DNA evidence does not render the verdict against the weight of the evidence (see e.g. People v Foulkes, 117 AD3d 1176, 1176-1177 [3d Dept 2014], lv denied 24 NY3d 1084 [2014]; People v Lozada, 41 AD3d 1042, 1043 [3d Dept 2007], lv denied 9 NY3d 924 [2007]), especially in light of the other physical evidence that connected defendant to the crimes in question.
Entered: April 22, 2022
Ann Dillon Flynn
Clerk of the Court